IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

v.

STANLEY LEE RICHARDSON

Defendant

Criminal No. ELH-17-0390
Related Civil No. ELH-23-1435

**MEMORANDUM OPINION**

Stanley Richardson, the self-represented defendant, has filed a "Petition For Post Conviction For Relief" (ECF 79), citing Maryland law, as well as a "Motion To Correct An Illegal Sentence."  ECF 80.[1]  I shall refer to both ECF 79 and ECF 80 collectively as the "Motion."  The government opposes the Motion.  ECF 82.  It also submitted a transcript of the defendant's guilty plea proceeding.  ECF 82-1.  Richardson did not reply.

No hearing is necessary to resolve the Motion.  For the reasons that follow, I shall dismiss the Motion as untimely and, alternatively, I shall deny it.

## I.      Background

A federal grand jury returned a two-count Indictment against Richardson on July 25, 2017.  ECF 1. He was charged with possession with intent to distribute 28 grams or more of a mixture or substance containing cocaine base or "crack," in violation of 21 U.S.C. § 841(a) (Count One), and possession of ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g)(1) (Count Two).  Both offenses allegedly occurred on January 4, 2017.  *Id.*  But, Richardson was not arrested

---

[1] Richardson has also filed a motion for compassionate release.  ECF 70.  However, this Memorandum Opinion only addresses ECF 79 and ECF 80.  The Court will address ECF 70 as soon as possible.

on the charges until August 10, 2017. ECF 6, ECF 33.  He was initially detained.  ECF 6, ECF 10, ECF 20.  But, defendant was subsequently released on pretrial supervision.  ECF 30.  He then absconded.  ECF 35, ECF 39.

Richardson was arrested in North Carolina on state criminal charges.  ECF 43.  According to the Presentence Report in this case ("PSR," ECF 53), Richardson was convicted in North Carolina with attempted trafficking of heroin, and he was sentenced to 13 to 25 months of imprisonment.  *Id.* ¶ 35.[2]

In the underlying case, on August 13, 2021, pursuant to a Plea Agreement (ECF 49), Richardson entered a plea of guilty to Count One.  As noted, Count One charged defendant with possession with intent to distribute 28 grams or more of cocaine base on January 4, 2017.  *See* ECF 1; ECF 48.  The offense carries a maximum penalty of 40 years of imprisonment, with a mandatory minimum term of five years of imprisonment.  ECF 49, ¶ 3.

The Plea Agreement (ECF 49) contained a stipulation as to the offense level under the United States Sentence Guidelines ("U.S.S.G." or "Guidelines").  Specifically, the parties agreed that defendant had a base offense level of 24, to account for at least 28 grams but less than 112 grams of cocaine base.  ECF 49, ¶ 6(a).  And, the government agreed to a three-level reduction for acceptance of responsibility, under U.S.S.G. § 3E1.1.  *Id.* ¶6(h).  Further, the parties agreed that each had the right to advocate for a reasonable sentence.  *Id.* ¶ 9.  But, defendant reserved the right to appeal a sentence in excess of 120 months of incarceration, and the government reserved the right to appeal a sentence below 96 months of imprisonment.  *Id.* ¶ 10(b)(i), (ii).

---

[2] According to the PSR, the conduct occurred on December 20, 2018, and defendant pleaded guilty on December 18, 2019.  ECF 53, ¶ 35.

The factual basis for the plea was set forth in the Stipulation of Facts. *Id.* at 9. According to the Stipulation, law enforcement officers executed a search warrant at defendant's residence on January 4, 2017. *Id.* They recovered in excess of 28 grams of cocaine base. *Id.*

At the guilty plea proceeding, defendant took an oath to tell the truth. ECF 82-1 at 3. The Court conducted a thorough guilty plea colloquy, as required by Rule 11 of the Federal Rules of Criminal Procedure, to ensure that defendant's plea of guilty was both knowing and voluntary. *Id.* at 4-19.

Among other things, the Court told the defendant on several occasions that the offense involved possession with intent to distribute 28 grams or more of cocaine base. ECF 82-1 at 11, 14, 19. And, the defendant said that he understood. *Id.* at 11, 14. In other words, the Court specifically informed the defendant of the drug quantity at issue in the case. And, as noted, it was part of the stipulated facts. ECF 49 at 9.

The Court also reviewed defendant's interactions with his lawyer. *Id.* at 9-11. Defendant represented that he was satisfied with his attorney. *Id.* at 10-11.

In addition, the Court discussed with the defendant the specific terms of the Plea Agreement, including: (i) the parties' stipulations as to the Guidelines; (ii) that there was no agreement as to Richardson's criminal history; and (iii) that Richardson agreed to waive his rights to appeal both the conviction and the sentence. *Id.* at 19-23.

Of relevance here, Paragraph 10 of the Plea Agreement is titled "Waiver of Appeal." In Paragraph 10(a), defendant waived his right to challenge his conviction. In Paragraph 10(b), defendant waived his right to appeal the sentence, both as to its length and as to the term and conditions of supervised release, as well as the determination of defendant's criminal history and the Guidelines calculation. The waiver was subject to one caveat: defendant reserved the right to

appeal a sentence in excess of 120 months of imprisonment, and the government reserved the right to appeal a sentence less than 96 months of imprisonment. *See id.* ¶ 10(b)(i). The Court fully reviewed the terms of the provision with the defendant. ECF 82-1 at 21-23. And, defendant stated that he understood. *Id.* at 22, 23.

During the government's summary of the facts, the government referenced that the search of defendant's home on January 4, 2017, led to the recovery of more than 28 grams of cocaine base. ECF 82-1 at 35. But, the defendant claimed that only 14 grams were recovered, and he thought that he was pleading to that drug quantity. *Id.* at 36. In response, defense counsel said, *id.*: "Okay, well then don't plead guilty." *Id.* The Court then provided the defendant with an opportunity to confer privately with his lawyer. *Id.* at 37, 39.

Also in response, the government supplemented the facts that were set forth in the Plea Agreement. It stated that, in actuality, approximately 41 grams of crack were recovered from the defendant's residence, found in more than 100 baggies. *Id.* at 38. The government also noted that there had been a wiretap and an admission from the defendant when he was arrested. *Id.* The facts were not contested by the defendant.

Ultimately, the defendant acknowledged the accuracy of the facts as summarized by the government. *Id.* at 39. And, he admitted that he committed the crime as summarized by the government and wanted to plead guilty. *Id.* Further, he indicated that he did so freely and voluntarily, because he was guilty as charged. *Id.* The Court stated, *id.*: "[A]ny doubt in your mind?" Defendant responded, *id.*: "No doubt in my mind."

Sentencing was held on December 2, 2021. ECF 58; ECF 66; ECF 67. The Presentence Report (ECF 53) reflected that defendant had a total of 18 criminal history points. *Id.* ¶ 36. That resulted in a criminal history category of VI. However, pursuant to U.S.S.G. § 4B1.1, defendant

was deemed a career offender, based on the drug offenses referenced in paragraphs 28 and 35 of the PSR. *See* ECF 53, ¶¶ 19, 38. As a result, the defendant's base offense level increased from 24 to 34. *Id.* ¶ 19.

I pause to reiterate that the Plea Agreement contemplated a base offense level of 24. ECF 49, ¶ 6(a); ECF 82-1 at 19. But, the Plea Agreement also made clear that there was no agreement as to defendant's criminal history, and that the defendant's criminal history could alter his offense level. ECF 49, ¶ 7. And, as the record reflects, I explained this possibility to the defendant at the Rule 11 proceeding. *See* ECF 82-1 at 16, 20. Indeed, I said, in part, *id.* at 20-21: "[I]f you were found to be what's called a career offender, for example, that would affect your offense level. It would bump up, could be a big bump . . . it could put you into a higher Criminal History Category." The defendant indicated that he understood. *Id.* at 21.

After deductions for acceptance of responsibility, defendant had a final offense level of 31. *Id.* ¶ 22. With an offense level of 31 and a criminal history category of VI, the Guidelines called for a sentence ranging from 188 months to 235 months of imprisonment. However, if defendant were not a career offender, he would have had a final offense level of 21, with a Criminal History category of VI. In that circumstance, his Guidelines would have called for a sentence ranging from 77 to 96 months of imprisonment.[3]

---

[3] The parties agreed to a sentence of 96 to 120 months, unrelated to the Career Offender Guidelines. And, the Court imposed a sentence well below the Career Offender Guidelines. Nevertheless, it does not appear to the Court that the offense in Paragraph 38 was a proper predicate for Career Offender status. Although other offenses may have been proper predicates, they were not the ones that were utilized and may not be used as substitutes. *See United States v. Winbush*, 922 F.3d 227, 230-31 (4th Cir. 2019); *United States v. Hodge*, 902 F.3d 420, 428-29 (4th Cir. 2018). This issue will likely be addressed by the Court in connection with defendant's pending motion for compassionate release (ECF 70).

The Court adopted the advisory Guidelines range, as calculated in the Presentence Report (ECF 53), without any objection.  *See* ECF 66 (Sentencing Tr.) at 5.[4]  The government recommended a sentence of incarceration ranging between eight to ten years (96 months to 120 months).  *Id.* at 6.  Richardson requested a sentence of no more than 8 years (96 months).  *Id.* at 9.  The Court imposed a sentence of 100 months of incarceration, to be followed by 4 years of supervised release.  *Id.* at 18.  The government then moved to dismiss the open count.  *Id.* at 19-20.

Richardson did not appeal his conviction or his sentence.  However, on February 7, 2022, Richardson filed correspondence with the Court that I characterized as a motion to reduce his sentence. ECF 62 ("First Motion").[5]  Defendant asked the Court to correct his "illegal sentence," stating that the amount of crack cocaine that he possessed on the date of the offense was 14 grams, and not 28 grams, as charged.  *Id.*  Further, he complained that the "sentence imposed on [him was] enhanced as a result of this error."  Therefore, he asked the court "to correct the illegal sentence . . . ." *Id.*  The government responded.  ECF 65.  By Order of March 30, 2022, the Court denied the motion. ECF 68.

Then, on December 22, 2022, Richardson filed a motion for compassionate release under 18 U.S.C. § 3582, citing his health conditions and the effects of Covid-19. ECF 70. The government filed an opposition. ECF 75. That motion is pending.

---

[4] The government cites "Sentencing Transcript at 5."  However, it did not provide a copy of the transcript.  But, a copy of the transcript is docketed at ECF 66; *see* ECF 67.

[5] Arguably, the motion was tantamount to a post-conviction petition under 28 U.S.C. § 2255.

6

On May 11, 2023, Richardson filed a "Motion to Correct Illegal Sentence." ECF 80. He alleges that the court failed to advise him that a period of probation could be imposed. *Id.* This motion is docketed as a Motion to Vacate under 28 U.S.C. § 2255.

Soon after, on May 17, 2023, Richardson filed a "Petition For Post Conviction For Relief," alleging a series of errors. ECF 79.[6] In particular, defendant claims that he was improperly advised of the consequences of his plea; that he did not knowingly and voluntarily enter his guilty plea; that the court imposed an illegal sentence for the crime of possession with intent to distribute 28 grams of crack cocaine; and that he received ineffective assistance of counsel. *Id.*

As to the defendant's claim of ineffective assistance of counsel, defendant once again asserts that he was only in possession of 14 grams of crack cocaine, rather than the 28 grams for which he was convicted. *Id.* at 3. And, he contends that his lawyer failed to move for reconsideration within 90 days[7] and also failed to file an appeal.

Richardson's Motion relies on Maryland statutes and Maryland Rules. Nevertheless, the government has responded to his allegations. *See* ECF 82.

## II.    Timeliness of Motion

The government contends that defendant's Motion "should be denied as untimely." ECF 82 at 4.[8]

---

[6] For reasons unknown to the Court, the defendant's Motion to Correct Illegal Sentence is docketed on May 11, 2023, at ECF 80. The post-conviction motion is docketed afterwards, on May 17, 2023, yet it has an earlier ECF number, *i.e.*, ECF 79.

[7] The motion to reconsider is presumably a provision of Maryland law.

[8] Dismissal, rather than denial, is the appropriate disposition for a post-conviction petition that is untimely.

Section 2255(f) of 28 U.S.C. establishes a one-year period of limitations for filing a motion to vacate a federal conviction or criminal sentence, which runs from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

A judgment of conviction becomes "final" on the date when a petitioner declines to pursue further direct appellate review. *United States v. Sanders*, 247 F.3d 139, 142 (4th Cir. 2001). Here, Richardson was sentenced on December 2, 2021. ECF 58. The Judgment was entered on the docket on that same date. ECF 59. Richardson did not appeal his conviction or sentence. Therefore, his conviction became final on December 16, 2021, which was fourteen days after the Judgment was docketed. *See* Fed. R. App. P. 4(b)(1)(A)(i); *Clay v. United States*, 537 U.S. 522, 527 (2003).[9]

---

[9] Fed. R. App. P. 4(b) "is a mandatory claim – processing rule that operates without regard to the error complained of." *United States v. Brantley*, ___ F.4th ___, 2023 WL 8215209, at *1 (4th Cir. Nov. 28, 2023). It is not jurisdictional, however. *Id.* at *2. And, a claim of untimeliness can be waived. *Id.*

Richardson had one year to file a post-conviction motion under 28 U.S.C. § 2255, beginning December 16, 2021. Defendant's First Motion was filed on February 2, 2022. ECF 62. As noted, the Court denied the First Motion on March 30, 2022. ECF 68.[10]

The Motion at issue was not filed until May 2023. That is about five months after the expiration of the time provided by statute. Therefore, it is untimely. *Cf. Brantley*, 2023 WL 8215209 (concluding that an appeal filed 223 days after the Fed. R. App. P. 4(b) deadline was untimely, and that the defense attorney's failure to send the defendant paperwork needed to file an appeal, or the court's failure to inform the defendant of his right to appeal, did not excuse the Rule 4(b) violation).

Under *Holland v. Florida*, 560 U.S. 631 (2010), "a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace f. DiGuglielmo*, 544 U.S. 408, 418 (2005)). According to the Supreme Court, "the diligence required for equitable tolling purposes is reasonable diligence." *Holland*, 560 U.S. at 653 (internal quotation marks and citations omitted).

It is well established that "ignorance of the law is not a basis for equitable tolling." *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004); *see also Coston v. Campbell*, TDC-20-0087, 2022 WL 16553361, at *3 (D. Md. Oct. 31, 2022) ("Even in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling.") (citing *Sosa*, 364 F.3d at 512); *see also Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 478 (5th Cir. 1991) (finding that petitioner's "unfamiliarity with the legal process" and "ignorance of [his] legal rights" did not warrant

---

[10] The First Motion arguably constituted a petition under § 2255, given that defendant claimed the Court imposed an illegal sentence. But, the government does not argue that the Motion constitutes an unauthorized, successive motion, in violation of 28 U.S.C. § 2255(h).

equitable tolling); *Strickland v. Crow*, 2022 WL 245521 (10th Cir. Jan. 27, 2022) ("[I]gnorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing." (internal quotations omitted), *cert. denied*, ___ U.S. ___, 142 S. Ct. 2877 (2022), *reh'g denied*, ___ U.S. ___, 143 S. Ct. 48 (2022).

Moreover, even if a defendant's ignorance of the law could reasonably be attributed to his attorney's failure to advise him, "ineffective assistance of counsel ordinarily does not warrant equitable tolling." *United States v. Cole*, ELH-18-0167, 2023 WL 1472019, at *5 (D. Md. Feb. 2, 2023) (citing *Harris v. Hutchinson*, 209 F.3d 325, 331 (4th Cir. 2000)); *see also Rouse v. Lee*, 339 F.3d 238, 248–50 (4th Cir. 2003) ("[A]ttorney error is not an extraordinary circumstance."); *Diaz v. United States*, WMN-12-3414, 2013 WL 709783, at *2 (D. Md. Feb. 26, 2013) (finding no basis for equitable tolling where petitioner claimed late filing was due to attorney's "failure to return [petitioner's] attempts at communication" because such "circumstances . . . are neither extraordinary nor demonstrate diligent pursuit of rights"); *Cf. Brantley*, 2023 WL 8215209 (concluding that defendant's failure to note a timely appeal is not excused by lawyer's conduct); *but see United States v. Martin*, 408 F.3d 1089, 1096 (8th Cir. 2005) (finding equitable tolling appropriate where defendant's attorney "misrepresented the law, misrepresented the status of [defendant's] case, and retained possession of documents that were crucial to [defendant's] claim"); *Baldayaque v. United States*, 338 F.3d 145, 152–53 (2d Cir. 2003) (finding equitable tolling appropriate where attorney failed to file § 2255 petition after defendant instructed him to do so, never spoke or met with defendant, and did not do legal research on defendant's case).[11]

---

[11] As ECF 325-1 reflects, the defendant has a lengthy prior record. He was not a newcomer to the criminal justice system. It seems quite implausible that if, defendant asked his lawyer to file an appeal in July 2018, defendant would wait years to ascertain the status of the appeal.

On the grounds advanced here, defendant is not entitled to equitable tolling. *See Allen v. United States*, WDQ-12-2260, 2013 WL 4495670, at *2 (D. Md. Aug. 16, 2013) (dismissing the § 2255 motion because defendant failed "to establish factors that warrant equitable tolling of the statute of limitations"); *Diaz*, 2013 WL 709783, at *1 ("[Petitioner] did not file the Motion until . . . eight months after the limitations period expired. Unless principles of equitable tolling apply, the Motion must be dismissed as untimely."). Because the Motion is untimely, it is subject to dismissal.

However, even assuming that the Motion was timely filed, it lacks merit, as discussed below.

## II.  Legal Standard

### A.

Section 2255(a) of Title 28 of the United States Code provides relief to a prisoner in federal custody only on specific grounds: "(1) 'that the sentence was imposed in violation of the Constitution or laws of the United States,' (2) 'that the court was without jurisdiction to impose such a sentence,' (3) 'that the sentence was in excess of the maximum authorized by law,' and (4) that the sentence 'is otherwise subject to collateral attack.'" *See Hill v. United States*, 368 U.S. 424, 426-27 (1962) (citing 28 U.S.C. § 2255); *see United States v. Hodge*, 902 F.3d 420, 426 (4th Cir. 2018); *United States v. Newbold*, 791 F.3d 455, 459 (4th Cir. 2015); *United States v. Pettiford*, 612 F.3d 270, 277 (4th Cir. 2010).

Under § 2255, the petitioner must establish (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law so fundamental as to render the entire proceeding invalid. *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). But, "an error of law does not provide a basis for collateral attack unless the claimed error constituted

'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill*, 368 U.S. at 428).  In order to prevail on a § 2255 motion, a defendant bears the burden of proving his grounds for collateral relief by a preponderance of the evidence.  *See Jacobs v. United States*, 350 F.2d 571, 574 (4th Cir. 1965).

The scope of collateral attack under § 2255 is narrower than on appeal, and a "'collateral challenge may not do service for an appeal.'" *Foster v. Chatman*, 488, 519 (2016) (Alito, J., concurring) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)). A failure to raise a claim on direct appeal constitutes a procedural default that bars presentation of the claim in a § 2255 motion, unless the petitioner can demonstrate "cause and actual prejudice resulting from the errors of which he complains," or "actual innocence." *Pettiford*, 612 F.3d at 280 (citing *United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999)); *see Bousley v. United States*, 523 U.S. 614, 621 (1998) ("Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal.") (internal quotations and citations omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *see also Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Reed v. Farley*, 512 U.S. 339, 354 (1994) (stating that "the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged violation.'"); *Finch v. McKoy*, 914 F.3d 292, 298 (4th Cir. 2019) (discussing requirements for a claim of actual innocence); *United States v. Linder*, 552 F.3d 391, 397 (4th Cir. 2009).

Generally, the rule governing procedural default of claims brought under § 2255 precludes consideration of any contentions that "'could have been but were not pursued on direct appeal, [unless] the movant . . . show[s] cause and actual prejudice resulting from the errors of which he complains.'"  *Pettiford*, 612 F.3d at 280 (quoting *Mikalajunas*, 186 F.3d at 492-93).  Under the "cause and prejudice" standard, the petitioner must show: (1) cause for not raising the claim of

error on direct appeal; and (2) actual prejudice from the alleged error.  *Bousley*, 523 U.S. at 622; *see Dretke*, 541 U.S. at 393; *Massaro v. United States*, 538 U.S. 500, 505 (2003); *see also Reed*, 512 U.S. at 354 (stating that "the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged violation.'"); *Murray*, 477 U.S. at 496; *Frady*, 456 U.S. at 167-68.

In order to show cause for not raising the claim of error on direct appeal, a petitioner must prove that "some objective factor external to the defense such as the novelty of the claim or a denial of effective assistance of counsel" impeded their counsel's efforts to raise the issue earlier. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991); *see Carrier*, 477 U.S. at 492 ("[C]ause . . . requires a showing of some external impediment preventing counsel from constructing or raising the claim."); *Mikalajunas*, 186 F.3d at 493 (movant must demonstrate "something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel"). Additionally, the alleged error cannot simply create a possibility of prejudice, but must be proven to work to the petitioner's "*actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *Frady*, 456 U.S. at 170 (emphasis in original).  Pursuant to the Supreme Court's ruling in *Carrier*, 477 U.S. at 494, prejudice does not support relief of a procedural default in the absence of a showing of cause.  *See also Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982).

The actual innocence exception "only applies in limited circumstances."  *United States v. Jones*, 758 F.3d 579, 583 (4th Cir. 2014).  Indeed, it must be "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent . . . ."  *Carrier*, 477 U.S. at 496.

In order to show "actual innocence," the petitioner "must demonstrate actual factual innocence of the offense of conviction, *i.e.*, that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." *Mikalajunas*, 186 F.3d at 494 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)); *see also Bousley*, 523 U.S. at 623. Notably, the petitioner must meet this burden by clear and convincing evidence. *Mikalajunas*, 186 F.3d at 494. In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Jones*, 758 F.3d at 583; *see Bousley*, 523 U.S. at 623.

As the Fourth Circuit has said, "[a] valid actual innocence claim 'requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.'" *Finch*, 914 F.3d at 298 (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). Moreover, a petitioner must "'demonstrate that the totality of the evidence would prevent any reasonable juror from finding him guilty beyond a reasonable doubt, such that his incarceration is a miscarriage of justice.'" *Finch*, 914 F.3d at 298 (quoting *Teleguz v. Pearson*, 689 F.3d 322, 329 (4th Cir. 2012)). It is an "exacting standard," based on a "'holistic judgment about all the evidence'. . . ." *Finch*, 914 F.3d at 299 (quoting *House v. Bell*, 547 U.S. 518, 539 (2006)).

Notably, failure to raise on direct appeal a claim of ineffective assistance of counsel is not regarded as procedurally defaulted. *Massaro v. United States*, 538 U.S. 500, 509 (2003); *see United States v. Faulls*, 821 F.3d 502, 507-08 (4th Cir. 2016). Indeed, such claims ordinarily are not litigated on direct appeal. Claims of ineffective assistance are cognizable on direct appeal "only where the record conclusively establishes ineffective assistance." *United States v. Baptiste*,

596 F.3d 214, 216 n.1 (4th Cir. 2010).  Rather, such claims are usually litigated in a § 2255 action

to allow for development of the record. *Massaro*, 538 U.S. at 504-06; *United States v. Ladson*, 793

F. App'x 202 (4th Cir. Feb. 12, 2020) (per curiam).

Moreover, the Court is mindful that a self-represented litigant is generally "held to a 'less

stringent standard' than is a lawyer, and the Court must liberally construe his claims, no matter

how 'inartfully' pled." *Morrison v. United States*, RDB-12-3607, 2014 WL 979201, at *2 (D. Md.

Mar. 12, 2014) (internal citations omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007);

*Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are

held "to less stringent standards than formal pleadings drafted by lawyers"); *Quintero v. Garland*,

998 F.3d 612, 634 (4th Cir. 2021) (same); *Bala v. Commonwealth of Virginia Dep't of

Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013) (per curiam) (same).

Pursuant to 28 U.S.C. § 2255(b), the court must hold an evidentiary hearing "[u]nless the

motion and the files and records conclusively show that the prisoner is entitled to no relief . . . ."

*United States v. Mayhew*, 995 F.3d 171, 176 (4th Cir. 2021); *see United States v. LeMaster*, 403

F.3d 216, 220-23 (4th Cir. 2005); *United States v. White*, 366 F.3d 291, 302 (4th Cir. 2004).

Ordinarily, a district court has discretion as to whether to hold a hearing, but "a hearing is required

when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the

record, or when a credibility determination is necessary to resolve the claim . . . ." *Mayhew*, 995

F.3d at 176-77. If the district court "denies relief without an evidentiary hearing," the appellate

court will "construe the facts in the movant's favor." *United States v. Akande*, 956 F.3d 257, 261

(4th Cir. 2020); *see also United States v. Turner*, 841 F. App'x 557, 559 (4th Cir. 2021) (same).

In my view, no hearing is necessary here because the Motion does not implicate matters of

credibility.

## B.   Ineffective Assistance of Counsel

Defendant claims that he was denied effective assistance of counsel because of his dispute as to the drug quantity; because his lawyer failed to file an appeal; and because his attorney failed to move for reconsideration within 90 days.  ECF 79 at 3.  Defendant does not specify the issues he wanted to raise on appeal.  Nor does he explain why the issues would not have been subject to the broad appellate waiver in Paragraph 10 of the Plea Agreement.  *See* ECF 49, ¶ 10.

The Sixth Amendment to the Constitution, cited by defendant, guarantees a criminal defendant the right to the effective assistance of competent counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, 580 U.S. 100, 118 (2017). Ineffective assistance of counsel is a well recognized basis for collateral relief. *See generally Missouri v. Frye*, 566 U.S. 133 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010).

To mount a successful challenge under 28 U.S.C. § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687–88; *see Williams v. Taylor*, 529 U.S. 362, 390 (2000); *United States v. Palacios*, 982 F.3d 920, 923 (4th Cir. 2020); *United States v. Akande*, 956 F.3d 257, 260 (4th Cir. 2020); *United States v. Winbush*, 922 F.3d 227, 229 (4th Cir. 2019); *United States v. Hall*, 771 F. App'x 226, 227 (4th Cir. 2019) (per curiam); *United States v. Carthorne*, 878 F.3d 458, 465 (4th Cir. 2017); *United States v. Powell*, 850 F.3d 145, 149 (4th Cir. 2017). First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *see Buck*, 580 U.S. at 118; *Chaidez v. United States*, 568 U.S. 342, 348 (2013); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Winbush*, 922 F.3d at 229; *Powell*, 850 F.3d at 149*; United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015); *United States v. Dyess*, 730 F.3d

354, 361 (4th Cir. 2013); *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012); *United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011); *see also United States v. Richardson*, 820 F. App'x 225, 226 (4th Cir. 2020) (per curiam); *United States v. Baker*, 719 F.3d 313, 318 (4th Cir. 2013). The petitioner must prove his claim by a preponderance of the evidence. *Mayhew*, 995 F.3d at 176; *Pettiford*, 612 F.3d at 277.

The first *Strickland* prong, known as the "performance prong," relates to professional competence. The petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness," as measured by "prevailing professional norms." *Strickland*, 466 U.S. at 688; *see Harrington v. Richter*, 562 U.S. 86, 104 (2011); *Richardson*, 820 F. App'x at 225; *Powell*, 850 F.3d at 149; *Hall*, 771 F. App'x at 227. The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690).

The lawyer's assistance "should, among other things, be legally competent, include relevant research, and raise important issues." *United States v. Cannady*, 63 F.4th 259, 265 (4th Cir. 2023). But, the Supreme Court has recognized that the "first prong sets a high bar." *Buck*, 580 U.S. at 118; *see also Powell*, 850 F.3d at 149. In *Padilla*, the Court stated, 559 U.S. at 371: "Surmounting *Strickland's* high bar is never an easy task." Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Buck*, 580 U.S. at 118 (citation omitted). Consequently, the performance prong is "'difficult'" to establish. *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) (quoting *James v. Harrison*, 389 F.3d 450, 457 (4th Cir. 2004)).

To satisfy the high bar, the burden is on the petitioner to establish "'that counsel made errors so serious that his "counsel" was not functioning as the "counsel" guaranteed by the Sixth Amendment.'" *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 687). Notably, "the *Strickland* standard must be applied with scrupulous care," because "the standard of judging counsel's representation is a most deferential one." *Richter*, 562 U.S. at 105; *see United States v. Morris*, 917 F.3d 818, 823 (4th Cir. 2019). Indeed, "[k]eenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence*, 517 F.3d at 708 (quoting *Strickland*, 446 U.S. at 689); *see Cullen v. Pinholster*, 563 U.S. 170, 189 (2011); *Richter*, 562 U.S. at 104; *Richardson*, 820 F. App'x at 225-26; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015).

Under the second *Strickland* prong, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Strickland*, 466 U.S. at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 580 U.S. at 119; *Lafler*, 566 U.S. at 163; *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993). "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687. However, a petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

A court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."

*Strickland*, 466 U.S. at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

In this case, defendant entered a plea of guilty, pursuant to a Plea Agreement.  Of relevance here, the plea process is regarded as "an essential aspect of the administration of criminal justice . . . ." *United States v. Lewis*, 633 F.3d 262, 269 (4th Cir. 2011).   Thus, the Sixth Amendment right to counsel extends to the plea-bargaining process. *McMann v. Richardson*, 397 U.S. 749, 771 (1970); *United States v. Murillo*, 927 F.3d 808, 815 (4th Cir. 2019); *United States v. Hall*, 771 App'x 226, 227 (4th Cir. 2019) (per curiam); *see also Frye*, 566 U.S. at 140-44; *Lafler*, 566 U.S. at 162.

In *Hill v. Lockhart*, *supra*, 474 U.S. 52, the Supreme Court explained that, "where . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness [and intelligence] of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"  *Id.* at 56 (citation omitted). But, in assessing whether counsel's performance was deficient, courts adopt a "strong presumption" that counsel's actions fell within the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Of import here, the prejudice prong of the *Strickland* test is "slightly modified" in the context of plea bargaining. *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988). In *Hooper*, the Fourth Circuit explained, *id.* (quoting *Hill*, 474 U.S. at 59):  "When a defendant challenges a conviction entered after a guilty plea, [the] 'prejudice' prong of the [*Strickland*] test is slightly modified. Such a defendant 'must show that there is a reasonable probability that, but for counsel's

errors, he would not have pleaded guilty and would have insisted on going to trial.'"  *Accord Burket v. Angelone*, 208 F.3d 172, 189 (4th Cir. 2000); *see also Richardson*, 820 F. App'x at 226.

*Hooper*, 845 F.2d 471, is illustrative.  There, the defendant, who had a history of mental illness, pled guilty in a Virginia court to second-degree murder. *Id.* at 472. However, his lawyers failed to obtain a psychiatric evaluation before the defendant's entry of the guilty plea. *Id.* Hooper subsequently filed a habeas corpus petition, which the district court denied. *Id.* On appeal, the Fourth Circuit noted that the "burden is on Hooper to establish a reasonable probability that if his lawyers had obtained a psychiatric report, he would have rejected the plea agreement" and gone to trial. *Id.* at 475.

The Fourth Circuit examined a psychiatric report obtained after the guilty plea against the background of the circumstances Hooper faced at the time he decided to plead guilty. The Court was not persuaded that the report provided evidence sufficient to establish a reasonable probability that Hooper would have declined the plea agreement and gone to trial, even if his counsel had obtained a psychiatric report at the time. *Id.* at 475-76. Although the Court concluded that the failure to obtain a psychiatric report fell below the objective standard of reasonableness established by *Strickland*, it was satisfied that Hooper was not prejudiced because there was no reasonable probability that the deficiency changed the outcome of the proceeding.

Notably, the defendant has the burden to establish a reasonable probability that, but for counsel's deficient performance, he would not have entered a plea of guilty. *Murillo*, 927 F.3d at 817.  Defendant has not done so.

A guilty plea is a "waiver of [a defendant's] right to trial before a jury or a judge." *Brady v. United States*, 397 U.S. 742, 748 (1970). It is "a grave and solemn act . . . ." *Id.*  Therefore, in order for a guilty plea to be valid, it must be voluntary. *Id.*  And, "[w]aivers of constitutional rights

not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Id.*; *see Bradshall v. Stumpf*, 545 U.S. 175, 183 (2005) (same).  Thus, a defendant's plea of guilty must reflect an "intelligent choice among the alternative courses of action open to the defendant."   *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).

A plea cannot be "voluntary in the sense that it constituted an intelligent admission . . . unless respondent received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Henderson v. Morgan*, 426 U.S. 637, 645 (1976) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)).  However, the Supreme Court clarified in *Marshall v. Lonberger*, 459 U.S. 422, 436 (1983), that "it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." *Marshall*, 459 U.S. at 436 (1983) (quoting *Henderson*, 426 U.S. at 647) (internal quotations omitted).

Of import here, a defendant is "bound," absent clear and convincing evidence to the contrary, "by the representations he made under oath during a plea colloquy." *Fields v. Attorney Gen. of Md.,* 956 F.2d 1290, 1299 (4th Cir. 1992); *see Blackledge v. Allison*, 431 U.S. 63, 74-75 (1977); *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005). Indeed, "a defendant's solemn declarations in open court affirming a [plea] agreement . . . 'carry a strong presumption of verity.'" *Lemaster*, 403 F.3d at 221 (quoting *Blackledge*, 431 U.S. at 74). Therefore, conclusory allegations in a § 2255 petition that are contrary to testimony provided at a Rule 11 hearing are "palpably incredible and patently frivolous or false." *Lemaster*, 403 F.3d at 222. As the Fourth Circuit has explained, "courts must be able to rely on the defendant's statements made under oath

during a properly conducted Rule 11 plea colloquy." *Id.*; *see also Blackledge,* 431 U.S. at 74; *White*, 366 F.3d at 295-96; *United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003).

The Fourth Circuit has acknowledged that on post conviction a defendant who has pled guilty "has an incentive to claim, in retrospect, that the result of the plea process would have been different regardless of whether that claim is, in fact, true." *Murillo*, 927 F.3d at 815; *cf. Lee v. United States*, 582 U.S. 357, 369 (2017) ("Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies."). Therefore, "to prevent criminal defendants with bargainer's remorse, from simply claiming they would not have taken a deal but for a bit of bad advice," the defendant must "provide evidence of [his] sincerity." *Murillo*, 927 F.3d at 816. In particular, the defendant "must point to evidence that demonstrates a reasonable probability that, with an accurate understanding of the implications of pleading guilty, he would have rejected the deal." *Id.* Here, defendant does not "point to evidence" that undermines his knowing and voluntary decision to plead guilty based on a complete "understanding of the implications of pleading guilty . . . ." *Id.*

In the context of a plea bargain, "the defendant is the master of the outcome." *Murillo*, 927 F.3d at 815. Therefore, "[t]he prejudice analysis in the context of the plea-bargaining process requires a fact-based evaluation of the weight of the evidence." *Id.* at 815. The "plea agreement language and sworn statements must be considered in their context[.]" *Id.* at 817; *see Lemaster*, 403 F.3d at 221-22; ECF 45-1 at 38-39.

Defendant knowingly and voluntarily admitted to possession with intent to distribute 28 grams or more of cocaine base. *See*, *e.g.*, ECF 82-1 at 39. To the extent that defendant now complains about the drug quantity, he swore under oath as to the accuracy of the quantity. Any attempt to dispute that assertion is groundless.

Further, defendant complains that the Court imposed a four-year period of "probation," without advising him that the Court could so.  However, defendant was not sentenced to probation.  Rather, the Court imposed four years of supervised release.  Moreover, the Court clearly advised defendant of the possibility of at least four years of supervised release, along with an explanation about the concept of supervised release and the mechanics of supervised release.  ECF 82-1 at 14, 17-18.  Richardson indicated that he understood.  *Id.* at 18.  In addition, the Court addressed supervised release when discussing the appellate waiver in Paragraph 10 of the Plea Agreement.  *Id.* at 21-23.  Again, defendant signified that he understood.  *Id.* at 23.

In any event, defendant's complaints regarding the drug quantity and the imposition of "probation" are  subject to a valid appellate waiver.

As discussed, Paragraph 10 of the Plea Agreement contains a broad appellate waiver.  To be sure, a defendant "retains the right to obtain appellate review of his sentence on certain limited grounds." *United States v. Attar*, 38 F.3d 727, 732 (4th Cir. 1994).  Defining these limited grounds, the Fourth Circuit recently "explained that a defendant does not, for instance, waive his right to appeal a sentence 'where the sentencing court violated a fundamental constitutional or statutory right that was firmly established at the time of sentencing.'"  *United States v. Carter*, ___ F.4th ___, 2023 WL 8043834, at *4 (4th Cir. Nov. 21, 2023) (quoting *United States v. Archie*, 771 F.3d 217, 223 (4th Cir. 2014)).   However, defendant makes no showing to meet this standard.  Therefore, defendant waived any complaints as to "probation" or the drug quantity.

Defendant also complains that his lawyer failed to file an appeal.  But, as mentioned, defendant has not identified any viable grounds for appeal.  Nor has he even shown that he made such a request.  In any event, given the broad waiver in Paragraph 10, any error appears harmless.

As to defense counsel's failure to move to reconsider within 90 days, defendant apparently relies on a principle of Maryland law.  It is not a ground for relief under 28 U.S.C. § 2255.

"A claim of ineffective assistance of counsel presents a mixed question of law and fact . . . ."  *United States v. Williams*, 2023 WL 8183301, at *1 (4th Cir. Nov. 27, 2023) (per curiam).  Neither the facts, construed in defendant's favor, nor the law, supports defendant's claim of ineffective assistance.

### III. Conclusion

For the foregoing reasons, I shall dismiss the Motion as untimely or, in the alternative, deny it.

### IV.  Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant as to a post conviction claim.

A COA is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). In other words, unless a COA is issued, a petitioner may not appeal the court's decision in a § 2255 proceeding. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b).

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, 580 U.S. 100, 115 (2017). Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003).

Defendant has not made a substantial showing of the denial of his constitutional rights.

Therefore, I decline to issue a COA.[12]

An Order follows, consistent with this Memorandum Opinion.


Date:   November 29, 2023                              _____/s/_____
                                                      Ellen L. Hollander
                                                      United States District Judge

---

[12] The denial of a COA by the district court does not preclude defendant from seeking a COA from the appellate court, *i.e.*, the United States Court of Appeals for the Fourth Circuit.